## CAMPBELL et al. v. HOOD.
### No. 986—5141.

Commission of Appeals of Texas, Section B.
Feb. 4, 1931.

Seabury, George & Taylor, of Brownsville, for plaintiffs in error.

Spears & Montgomery, of San Benito, H. L. Yates, of Brownsville, and C. C. Bowie, of San Benito, for defendant in error.

LEDDY, J.

Defendant in error employed plaintiffs in error, agreeing to give them a certain commission if they would procure a buyer ready, willing, and able to purchase 2,500 acres of land owned by him situated in Cameron county. In pursuance of this contract, plaintiffs in error procured the James-Dickinson Farm Mortgage Company, a private corporation, as a purchaser; terms of sale were agreed upon and embodied in a written contract between the corporation and the owner of the land. Thereafter, the owner refused to finally consummate the deal, and this suit was brought to recover the commission for the services thus rendered plaintiffs in error.

Among other defenses, defendant in error pleaded that the James-Dickinson Farm Mortgage Company was a private corporation, chartered under the laws of the state of Texas for the purpose of "the accumulation and loaning of money upon personal and real property; taking and receiving evidences of debt and proper liens to secure such money as may be loaned by said company," and that the land proposed to be purchased by said company was not necessary to enable it to do business in Texas, nor was the same being purchased in the due course of its business to secure the payment of a debt. That its contract to purchase said land was not such a contract as the corporation had power under its charter and under the laws of Texas to make, but was one which the corporation was expressly prohibited by the laws of this state from making, and therefore plaintiffs in error were not entitled to recover a commission for their services in procuring such purchaser.

The trial court sustained a demurrer to this defense and upon the trial excluded evidence offered to sustain same. The assignments of error complaining of these rulings present the only question necessary to be determined upon this appeal.

Defendant in error presents the proposition that as plaintiffs in error procured the James-Dickinson Farm Mortgage Company, a

corporation, to agree to perform an act forbidden by the law of this state, their services are tainted with illegality, hence they should not be permitted to recover compensation therefor.

Plaintiffs in error attempt to meet the proposition thus made by asserting that even though the purchaser procured was prohibited by the law from taking title to said real estate, a conveyance to it of the land would not have been void but voidable only at the instance of the state.

It is further urged by plaintiffs in error that defendant in error is estopped to deny the purchaser's willingness and ability to complete the contract of sale by reason of his having accepted such purchaser and entered into an executory contract of sale with it.

We are inclined to the view that neither of the reasons urged by plaintiffs in error is sufficient answer to the proposition that a broker should not be permitted to recover a commission, when the services for which he seeks compensation necessarily bring about a violation of the statutes of this state.

For many years it has been the established policy of our state to prohibit corporations, with certain exceptions, from acquiring land. Our courts will not lend their aid to assist any person to recover compensation for services, the necessary result of which is to violate such policy.

It is provided in article 1359, R. S. 1925:

"No private corporation shall be permitted to purchase any lands under any provision of this chapter, unless the lands so purchased are necessary to enable such corporation to do business in this State, or except where such land is purchased in due course of business to secure the payment of debt."

Article 1364, R. S. 1925, directs the Attorney General, or the proper district or county attorney, upon receiving information that any corporation is holding land in violation of the above provision, to institute forfeiture or escheat proceedings, and if it be determined in such action that the land is illegally held, the court is directed to order it sold under execution, and the proceeds of such sale, less costs of suit, are paid out of the state treasury to the stockholders of the offending corporation.

When defendant in error employed plaintiffs in error and agreed to pay them a commission if they would find a purchaser ready, able, and willing to buy his land, it was necessarily implied that such purchaser would be one not prohibited by the laws of this state from acquiring the property. It must be presumed, in the absence of any agreement to the contrary, that the parties to the contract did not contemplate its consummation would violate any provision of the laws of this state. Plaintiffs in error were chargeable with notice of the fact that our laws expressly prohibited the James-Dickinson Farm Mortgage Company from purchasing the land. With knowledge of such fact they induced the corporation, thus explicitly forbidden from acquiring the land, to enter into an agreement to violate the statute. Under such circumstances they are in no position to receive aid from the courts in enforcing payment to them of compensation for such services.

It is a salutary principle, universally applied, that a court will decline to lend its aid to a person seeking compensation for the doing of an act which violates the public policy of the state as expressly declared by the lawmaking power. A clear statement of this principle is that given by the Supreme Court of the United States in Bank of United States v. Owens, 2 Pet. 538, 7 L. Ed. 508, wherein it is said:

"No court of justice can in its nature be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of a country; how can they then become auxiliary to the consummation of violations of law? * * * There can be no civil right, where there can be no legal remedy; and there can be no legal remedy, for that which is itself illegal."

Again, the same court, in Coppell v. Hall, 7 Wall. 542, 559, 19 L. Ed. 244, reaffirmed this doctrine in the use of this language:

"The principle to be extracted from all the cases is, that the law will not lend its support to a claim founded upon its violation."

In discussing the right of a broker to recover a commission for services rendered in consummating a transaction in violation of law, the court, in Irwin v. Williar, 110 U. S. 510, 4 S. Ct. 160, 166, 28 L. Ed. 225, stated:

"But we are also of the opinion that when the broker is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is particeps criminis, and cannot recover for services rendered or losses incurred by himself on behalf of either, in forwarding the transaction."

To the same effect is the rule announced by the Supreme Court of California in Berka v. Woodward, 125 Cal. 119, 57 P. 777, 779, 45 L. R. A. 420, 73 Am. St. Rep. 31, in which it is declared:

"The defense of public policy has no element of punishment in it, nor is it allowed out of consideration for the defendant. It is upheld by the consideration which the law ever entertains for the protection of the public, and the settled policy of the courts to give no aid to the enforcement of contracts whose general tendency is injurious to the public. Hence the courts refuse all relief to one who asks compensation for the doing of an act which is conclusively presumed to be hurtful to public interests or morals."

■■ In order to be entitled to the commission agreed upon, it was the duty of the brokers in this case to obtain a purchaser for defendant in error's land who was ready, willing, and able to purchase the same. By the term "able" was meant that the proposed purchaser had the financial ability, as well as legal capacity, to acquire the land. It is shown that the corporation procured by the broker was ready and willing to consummate the deal, but was it legally able to do so? Its legal ability to acquire the land under its contract was dependent upon the failure of any stockholder of the company to take action in the courts to prevent it from misapplying its assets or the failure of the Attorney General of this state to prevent the same by proper legal proceedings. Beyond question either of these parties could have prevented the carrying out of this contract by invoking the aid of a court of equity. It cannot therefore be held that the brokers have complied with their agreement to procure a purchaser for defendant in error's land with the legal capacity to acquire it. The most that can be said is that after the corporation had signed the contract it might be able to carry out the same if not enjoined by the Attorney General or one of its own stockholders. In other words, its ability to complete the purchase of this land was dependent upon its success in violating its duty to the state and its stockholders.

It is true, as argued by the plaintiffs in error, that if the corporation had consummated the deal by acquiring the land no one could have questioned its title except the state. Schwab Clothing Co. v. Claunch (Tex. Civ. App.) 29 S. W. 922; Ray v. Foster (Tex. Civ. App.) 53 S. W. 54. This fact, however, did not prevent the transaction from being unlawful, as such policy was adopted to prevent the inconvenience and embarrassment which would result from declaring absolutely void titles to land acquired by corporations in violation of the statute. However, if it had acquired the land, the same would have been subject to escheat under proceedings brought by the Attorney General. Admittedly, the corporation would have had no defense to a suit by such official charging that its acquisition of the land was in violation of the statute and contrary to public policy. Upon a trial the court would have rendered judgment ordering the land escheated and sold in accordance with the provisions of the statute, and this court would have been compelled to have approved such a judgment. It would be the rankest sort of inconsistency for this court to affirm a judgment annulling the transaction because of its illegality and by another judgment to compel compensation to be paid to those whose services were responsible for its consummation.

■ While a deed to a corporation of land which it is forbidden to acquire is not void, but merely voidable, any contract by which it agrees to acquire land which the statute prohibits is absolutely void and unenforceable. An executory contract in violation of this very statute was expressly held to be void by the Circuit Court of Appeals for the Fifth District, in Jackson v. Western Union Tel. Co., reported in 269 F. 598, 599. Jackson sued to recover from the telegraph company for the failure to deliver a telegram which would have resulted in an executory contract for it to purchase lands which it did not have the capacity to acquire under the laws of this state. Plaintiff was denied a recovery on the specific ground that the executory contract which would have resulted from the delivery of the telegram was absolutely void because prohibited by the statutes of this state. In passing on the question the court said:

"It cannot well be said that the plaintiff would have been benefited by the prompt delivery of the telegram in question, if the contract resulting from the acceptance by the Cooking Oil Company of the proposition made to it by the plaintiff was an executory one, conferring on the plaintiff no legally enforceable right. The prompt delivery of the telegram would have served only to inform plaintiff that the Cooking Oil Company agreed to trade its oil mill refinery property for the Gaines county lands. That that agreement, made under the circumstances stated, created no legal obligation, we think is plainly shown by the following provisions of the statute law of Texas:

" 'No private corporation shall be permitted to purchase any land under the provisions of this chapter, unless the lands so purchased are necessary to enable such corporation to do business in this state, or except where such land is purchased in due course of business, to secure the payment of debt.'

" 'All private corporations authorized by the laws of Texas, * * * as mentioned in the preceding articles, which have, heretofore, * * * acquired by lease, purchase or otherwise more land than is necessary to enable them to carry on their business, shall, within fifteen years from the time this law takes effect, * * * sell and convey in fee simple all lands so acquired, and which are not necessary for the transaction of their business.'

" 'No private corporation heretofore or hereafter chartered or created whose main purpose of business is the acquisition or ownership of land by purchase, lease or otherwise shall hereafter be permitted to acquire any land within this state by purchase, lease or otherwise.'

" 'No corporation, domestic or foreign, doing business in this state, shall employ or use its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation or those permitted by law.'

"Revised Civil Statutes of Texas 1911, §§ 1175, 1176, 1177, and 1164.

"The agreement was an executory one of a private corporation to purchase lands not necessary to enable it to do business in Texas, and it was not one for the purchase of land in due course of business, to secure the payment of debt. It was one to do a thing prohibited by the above set out statute law. The stated exceptions to the explicit prohibition do not include a purchase of land by a corporation for the purpose of winding up its affairs, paying debts, and distributing its assets among its shareholders. The timely receipt of the telegram by the plaintiff could not have had the effect of making the oil mill refinery property subject to the plaintiff's control, so as to enable him to realize a profit on a resale of it. The contract was not merely ultra vires in the proper sense; that is to say, outside the object of the corporation's creation as defined in the law of its organization, but was explicitly prohibited by statute. Such a contract is not voidable only, but is wholly void, and of no legal effect. Central Transportation Co. v. Pullman Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; Jacksonville v. Hooper, 160 U. S. 514, 16 S. Ct. 379, 40 L. Ed. 515; McCormick v. Market Nat. Bank, 165 U. S. 538, 17 S. Ct. 433, 41 L. Ed. 817; California National Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198. The purpose of the telegram was to obligate the sender to do a thing prohibited by the law of Texas. The sending of it was a step towards bringing about a forbidden result. The plaintiff could not have been damaged by a failure to get notice of the making of a promise which created no obligation and was without any legal effect. His position was not changed for the worse by the defendant's negligent failure to deliver. The timely delivery of the telegram would not have improved the plaintiff's position with respect to contemplated trades based upon the oil mill refinery property being subject to his disposition. He was equally without any enforceable right in or to that property, whether the proposition he had submitted was accepted or rejected. The conclusion is that the plaintiff acquired no right as a result of the non-delivery of the telegram evidencing the Texas Cooking Oil Company's undertaking to do a thing prohibited by the law under which it existed. It follows that the court did not err in ruling as above stated."

If the owner of the land had paid the broker his commission when the executory contract was completed, he might have been denied the privilege for which he had paid— the right to complete the sale of his land—if any stockholder of the company had instituted a suit in a court of equity for an injunction to restrain the corporation from using the corporate funds for a purpose expressly forbidden by statute. That any single stockholder could have enjoined the consummation of the executory contract is settled under all the authorities. In Corpus Juris, vol. 14, p. 875, § 1334, it is said:

"A single stockholder may sue the corporation to restrain or annul an ultra vires act. In other words, a single stockholder may enjoin or obtain relief from the diversion of joint funds to a purpose outside the object for which the corporation was organized. * * * In a proper case, stockholders may apply to a court of equity for a preventive remedy by injunction to restrain those who are administering the affairs of the corporation from doing acts which are ultra vires."

In Thompson on Corp. § 2482, the universal rule on this subject is announced as follows:

"The rule of the preceding section as to the right of the State alone to question the power of a corporation to take and hold real estate is not without exception. In the first place a stockholder has the right to the aid of a court of equity to prevent the corporation or its managing officers from misapplying its capital or from doing acts which amount to a violation of its charter."

If the corporation had purchased the land under the contract made by it with the owner, it would have violated the statute and such act would have caused, under a proper enforcement of the law, the machinery of the state to be set in motion for the purpose of undoing the transaction by forfeiture or escheat proceedings. A rather peculiar situation would exist if the judicial branch of the government should force the payment of a commission to a broker for services in consummating a transaction which rendered it necessary for another department of the same government to immediately institute proceedings to set aside as being unlawful and contrary to public policy.

The principle upon which relief is denied to the brokers in this case has been uniformly applied by the courts throughout the country. In Keeveny v. Chas. R. McCormack & Co., 266 F. 314, the Circuit Court of Appeals for the Second Circuit held that a broker was not entitled to a commission for negotiating the sale of a vessel in violation of section 9 of the Shipping Board Act (U. S. Comp. St. § 8146e [46 USCA § 808]), prohibiting the sale of any vessel of United States registry without the approval of the board to any person not a citizen of the United States.

In Markowitz v. Arrow Construction Co., Inc., 102 Misc. Rep. 532, 169 N. Y. S. 159, 161, the Supreme Court of New York denied a broker compensation for procuring a lessee ready and willing to use a building solely as a garage, who entered into an agreement as to the terms of the lease with the owner, but at the last moment refused to lease because such business could not be carried on in the zone by reason of the resolution of the board of estimate and apportionment restricting said

zone to residential use. The court, in speaking of the agent's right to a commission for procuring the lease, said:

"Any act, promise, or agreement designed or intended to accomplish the furtherance or effectuation of the unlawful purpose was unlawful, and every such promise or agreement was void and unenforceable. Respondent's counsel argues for a distinction between acts that are mala in se and those that are mala prohibita, but we find no authority for his contention. Indeed, the very commonest, perhaps, of all illegal contracts are those bad for usury in which, by universal admission, there is nothing inherently immoral; and, could it be seriously argued that a broker who procured a lender for a loan that was on its face, or to the knowledge of the broker, usurious, would be entitled to a brokerage commission?"

In King v. Johnson, 30 Cal. App. 63, 157 P. 531, the Appellate Court of California held a real estate broker who sold lots for the owner was not entitled to a commission because the sales had been made without complying with a statute which required a map or plat of the addition in which the lot was situated to be certified and recorded. The broker was denied the right to a commission because his act was tainted with illegality. In discussing this question the court said:

"It would seem clear that, in the absence of a compliance with the statute, it was a violation of law for defendants to even offer the lots for sale; and, if this be true, it was likewise a violation of law for plaintiff, as their agent, to offer them for sale, thus joining with his principals in a known illegal act for the doing of which he asks compensation. He is then seeking to recover for services, the performance of which was prohibited by law."

In the case of marginal transactions it has been repeatedly held that if a contract contemplates that the stock or commodity to be purchased is to be settled and adjusted by the mere payment of difference in price, it is a gambling contract, and a broker who knowingly consummates such a contract would not be entitled to recover his commission. Anderson v. Holbrook, 128 Ga. 233, 57 S. E. 500, 11 L. R. A. (N. S.) 575; Stewart v. Schall, 65 Md. 289, 4 A. 399, 57 Am. Rep. 327; Harvey v. Merrill, 150 Mass. 1, 22 N. E. 49, 5 L. R. A. 200, 15 Am. St. Rep. 159; Crawford v. Spencer, 92 Mo. 498, 4 S. W. 713, 1 Am. St. Rep. 745; Hallet v. Aggergaard, 21 S. D. 554, 114 N. W. 696, 14 L. R. A. (N. S.) 1251; Richter v. Poe, 109 Md. 20, 71 A. 420, 22 L. R. A. (N. S.) 174, 175, and note.

There are some cases holding that where a broker brings a purchaser and seller together, who are capable of entering into a lawful contract, but who commit an act in violation of the statute, the broker is entitled to his commission. This, however, is not such a case. Here the law positively prohibits the act which the broker brought the parties together for the purpose of performing. The agent was therefore a party to the illegal act. He procured a corporation which he knew was forbidden by statute from buying the land and obtained its signature to a contract, which if finally consummated would violate the well-settled policy of this state as expressed in its legislative enactment. Under such circumstances, he becomes particeps criminis in the illegal transaction, hence should be denied compensation for the services rendered.

The rule applicable under the facts here presented is well stated in Corpus Juris (Vol. 9, p. 634), wherein it is said:

"If the transaction negotiated by a broker is illegal, and he participates in the illegality, or has knowledge thereof, he is not entitled to compensation. So if the services rendered by a broker are tainted with illegality he is not entitled to a commission."

A similar rule is declared in Street v. Houston Ice Co. (Tex. Civ. App.) 55 S. W. 516, where a broker procured a combination between two companies which violated the antitrust law of this state and was denied the right to recover his commission on the ground that the services rendered by him brought about the commission of an illegal act.

It is not intended to decide what would be the broker's right of recovery if the owner of the property had consummated the deal with the corporation and received the purchase price for his property, as a different question might be presented under a plea of estoppel.

We cannot affirm the judgment of the Court of Civil Appeals, although we have reached the same conclusion as that court with respect to plaintiffs in error's right to recover, for the reason that the facts sustaining the defense of illegality were excluded by the court and the record contains no evidence showing the want of power of the corporation to acquire the land in question.

We therefore recommend that the judgments of the trial court and the Court of Civil Appeals be reversed, and the cause remanded for another trial not inconsistent with the views herein expressed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.