**PADRE SANDS, INC., Appellant,**

v.

**Jack CAWOOD d/b/a Action Realty Company and John L. Tompkins & Co., Appellees.**

**No. 1507.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 28, 1980.

Rehearing Denied March 27, 1980.

---

James A. Hall, Jones & Lewis, McAllen, for appellant.

Paul Cunningham, A. C. Nelson, Carinhas & Cunningham, Brownsville, for appellees.

## OPINION

BISSETT, Justice.

This is a suit to recover a brokerage commission. Jack Cawood d/b/a Action Realty Company and John L. Tompkins and Company sued Padre Sands, Inc., for a commission allegedly earned pursuant to a listing agreement executed by the parties. Following a jury trial, judgment was rendered that the plaintiffs recover from the defendant the sum of $28,000.00 ($25,000.00 for the commission and $3,000.00 for attorney's fees). Padre Sands, Inc. has appealed. Appellant will be referred to as "defendant" and appellees will be referred to as "plaintiffs," as they were in the trial court.

Two points of error are presented. Defendant claims that the listing agreement was an illegal contract which precluded the recovery of a commission, and that there is no evidence that a contract to purchase in compliance with the listing agreement was timely submitted to defendant.

Prior to the introduction of any evidence, it was stipulated by and between the parties as follows:

(1) For the purposes of this cause, plaintiffs were duly licensed real estate brokers at all times material to the suit;

(2) Defendant was the owner of tracts 41, 42 and 43 out of the South Padre Island Investment Subdivision, Section One, Cameron County, Texas, which is described in the listing agreement and was, and is, the only asset of the defendant corporation;

(3) the Board of Directors of the defendant corporation held a meeting on August 20, 1971, when it authorized the proper officers of the defendant corporation to enter into a listing agreement with Action Realty Company covering the subject land;

(4) a contract of sale was later signed by R. Berry Carter, Jr., trustee, as purchaser of the subject land, which contract was tendered but never executed by the defendant corporation;

(5) R. Berry Carter, Jr., trustee, was a ready, willing and able purchaser;

(6) on August 4, 1972, all interested parties had actual knowledge that a sale of the subject property had to be approved by two-thirds of the stockholders of defendant corporation;

(7) the necessary two-thirds of the stockholders of defendant corporation refused to consummate the proposed sale of the subject property to R. Berry Carter, Jr., trustee;

(8) $3,000.00 would be a reasonable attorney's fees if attorney's fees are recoverable under Tex.Rev.Stat.Ann. Article 2226 (1971).

The listing agreement was signed by defendant corporation acting by and through Victor H. Trammell, its president and M. B. Huffman, its secretary-treasurer, as "owner," and by J. E. Koger, agent for plaintiffs, as "realtor." It provided in part:

"For and in consideration of your listing the property described on the reverse side hereof . . . I or we hereby appoint you exclusive agent and grant you the exclusive right to sell said property for a period of 365 days from this date, at the price of $250,000 . . . we further agree to pay you at Harlingen, Texas, a commission of 10% of the price received from such sale."

The listing agreement bears the date "8–24–71."

The by-laws of defendant corporation provide that the business affairs of the corporation shall be managed by the Board of Directors and that the president shall be the principal executive officer of the corporation. The by-laws further provide that the president, subject to the control of the Board of Directors, shall supervise and control all of the business affairs of the corporation. With respect to contracts, it is provided that the Board of Directors may authorize any officer of the corporation to enter into any contract in the name of and on behalf of the corporation.

We first consider whether the listing agreement is illegal as being in contravention of Tex.Bus.Corp. Act, § 5.10 (Supp. 1980), as contended by defendant. The pertinent part of Article 5.10 provides that a "sale, lease, exchange, or other disposition" of all, or substantially all of the property and assets of a corporation "may be authorized" by a resolution of the Board of Directors recommending such "sale, lease, exchange or other disposition" and must be authorized by "the affirmative vote of the holders of at least two-thirds of the outstanding shares of the corporation."

Defendant, in support of its claim that the listing agreement is illegal, relies principally on *Campbell v. Hood,* 35 S.W.2d 93 (Tex.Comm'n App.1931, holdings approved). That case is distinguishable on its facts from the instant case. In *Campbell,* the broker, pursuant to the provisions of a listing contract, procured a corporation as prospective purchaser of the land, but the corporation was prohibited by law from purchasing the land involved. The sale was never made, and the broker sued for his commission. The court held that he was not entitled to a commission because the transaction was tainted with illegality since the broker procured a purchaser who agreed to violate the law, and, consequently, did not procure a purchaser who was "legally able" to purchase the land in question. That is not the case here. There is no

law which prohibited Carter, the proposed purchaser, from purchasing the land owned by defendant.

There is a marked difference between a listing agreement for the sale of land and a contract of sale thereof. A listing agreement does not obligate the owner to convey title or interest in land. It is an agreement which provides that the broker will be paid an agreed commission if he produces a purchaser ready, willing and able to buy the listed property under the terms of the agreement. See *Chamberlain v. North Central Investment Corp.,* 432 S.W.2d 581 (Tex.Civ.App.—Amarillo—1968, writ ref'd n. r. e.); 58 Tex.Jur.2d, Vendor and Purchaser § 3 (1964). A contract of sale is a contract whereby each of the parties has the right to specific performance so as to effect a conveyance of the property. *Ansley Realty Co. v. Pope,* 105 Tex. 440, 151 S.W. 525 (1912); *Paschen v. Lovett,* 255 S.W. 385 (Tex.Comm'n App.1923, opinion adopted); 58 Tex.Jur.2d, Vendor and Purchaser, §§ 2, 3, (1964).

The case at bar is somewhat analogous to the situation where a husband enters into an agreement for the sale of the homestead. In such a case the conveyance of the property requires his wife's approval. If his wife refuses to consummate the sale, the broker is still entitled to his commission. *McPherson v. Don Osborn,* 475 S.W.2d 804 (Tex.Civ.App.—Amarillo 1971, no writ); *Peters v. Coleman,* 263 S.W.2d 639 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n. r. e.).

In order to hold that a listing contract is covered by Article 5.10 of the Texas Business Corporation Act, we would be required to hold that a listing agreement is either a "sale, lease, exchange or other disposition" of the subject land. We hold that it is not.

The execution of a listing agreement for a proposed sale of land by a corporation falls within the ambit of management. Its use is only a method of soliciting a ready, willing and able purchaser of the land. It is neither a sale, lease, exchange or other disposition of the land, but is merely preparatory to a later sale of the land in ques-

tion. It is not an illegal contract, and is not tainted with illegality.

In this case, the matter of entering into the listing agreement was within the discretion of the executive officers of the defendant corporation, who acted pursuant to a resolution of the Board of Directors. The proper officers of the defendant corporation could have provided in the listing agreement that the payment of a commission was subject to approval of the sale by the owners of two-thirds of the outstanding stock in the corporation, but it did not make such a provision. The fact that the owners of more than one-third of the outstanding stock of the defendant corporation, after the listing agreement was signed by management, elected not to authorize the sale to the purchaser procured by plaintiffs was not the fault of plaintiffs. It did not render the listing agreement void so as to preclude a recovery of brokerage commissions under the listing agreement. Defendant's first point is overruled.

We next consider defendant's second point which, in essence, complains that there is no evidence to support the jury's finding that the contract of sale with Carter "with the 'finance provision' deleted was submitted to the defendant within the 365 days." The listing agreement is dated August 24, 1971. Mr. Huffman, the secretary-treasurer of defendant corporation at all times pertinent to this appeal, testified that he filled in the date of "8/24/71," on the front side of the listing agreement.

A meeting was held by the defendant's Board of Directors on August 4, 1972. At that meeting a contract of sale, dated July 29, 1972, signed by R. Berry Carter, Jr., Trustee, was presented. This contract provided that Carter would purchase the subject property for the sum of $250,000.00 to be paid on or before September 30, 1972, subject to the following conditions:

"contract subject to obtaining financing from First National Bank of Harlingen in the amount of $175,000.00."

Apparently, and despite the fact that the minutes reflect that a motion to accept Carter's offer carried, some of the directors

became dissatisfied with the condition relating to financing. As a result, the contract was returned to Carter about August 10, 1972. Carter then marked out in ink the objectionable condition about obtaining financing in the amount of $175,000.00 and signed his name on the face of the contract showing the deletion of that condition.

On August 21, 1972, defendant's Board of Directors met and the minutes of the meeting show that a notice of a called meeting of the shareholders of Padre Sands, Inc., was to be mailed to all shareholders. The meeting, to be held on September 5, 1972, was for the purpose of voting "on the matter of selling the three tracts on Padre Island owned by the corporation for the amount of $250,000.00." At that same meeting of the Board of Directors, the Board, by resolution, recommended that the corporation sell the subject property to Carter for the sum of $250,000.00 in cash, to be paid upon closing of the sale.

The authorization for the proposed sale by the owners of at least two-thirds of the outstanding stock of the defendant corporation was not obtained. As a result, the sale was never consummated. Plaintiffs then filed suit to recover the commission provided for in the listing agreement and attorney's fees.

There is evidence which supports the jury finding. The listing contract was dated August 24, 1971; the contract of sale was first submitted to defendant's Board of Directors on August 4, 1972; the objectionable condition regarding financing was deleted by the prospective purchaser on August 10, 1971, and the contract of sale, after the initial financing condition had been deleted, was again presented to the Board of Directors of the defendant corporation no later than August 21, 1972. This date was within the 365 days provided in the listing contract. That period of time commenced to run on August 24, 1971. Defendant's second point "that there is no evidence that a contract to purchase in compliance with the terms of the listing agreement was ever submitted to defendant corporation" cannot be sustained. The point is overruled.

The judgment of the trial court is AFFIRMED.