PARAGON OIL SYNDICATE V. RHOADES DRILLING COMPANY.

No. 4261.  Decided December 10, 1925.

(277 S. W., 1036).

**1.—Statutes—Contract—Right of Action—Regulating Manner of Conducting Business.**

The inhibition, under penalty of a fine, of the act of conducting a business in a prohibited manner does not evidence an intention to close the courts to those violating it, where there is no express provision that, in addition to the penalty, the contract shall be void or the offender shall be denied the right to maintain suit. (Pp. 154, 155.)

**2.—Same—Partnership Under Assumed Name.**

The Act of March, 1921, Laws 37th Leg., Ch. 73, p. 142, does not

prohibit conducting the business of a partnership under an assumeu or fictitious name. It recognizes, but regulates, the right to do so (Secs. 1, 2); providing a penalty for failing to comply with such regulation (Sec. 6); and recognizes also continuing liability for the partnership undertakings by retiring partners failing to comply. This does not render void a con· tract made with a partnership not complying with the regulations, nor deny to its members the right to maintain suit thereon guaranteed by the Bill of Rights. (Const. Art. 1, Sec. 13.)   (Pp. 153-156.)

### 3.—Same.

A distinction is to be observed between the denial of remedy on a contract because it is invalid, and a denial of the right to sue thereon, which, if the contract is not void nor the action on it expressly prohibited, is guaranteed by the Bill of Rights.   (Pp. 155, 156.)

### 4.—Statutory Construction—Laws Borrowed from Sister States.

The enactment of a statute in the language of that of another State already construed and applied by its courts will not be taken as a recognition by the Legislature of that construction and effect as intended by it where same appears to be wrong, and where similar language in their statutes had been construed and applied otherwise by the courts of other States.   (Pp. 157, 158.)

### 5.—Case Stated.

Plaintiffs, R. C. and G., doing business as partners under the style of "Rhoades Drilling Company," sued defendants for the contract price of sinking two oil wells for them. Defendants pleaded in abatement that plaintiffs were doing business under such assumed name in violation of chapter 73 of the Acts of the Thirty-seventh Legislature, not having complied with its requirements as to the registration of the firm name and of the names of the partners composing it. *Held*, that they were not thereby deprived of the right to sue on their contract, and that the plea in abatement was properly overruled.   (Pp. 151-158.)

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Young County.

The Supreme Court referred the question to the Commission of Appeals, Section A, for its opinion thereon, and here adopts same and directs it to be certified as its answer to the question.

*Marshall & King,* for appellants.

The Rhoades Drilling Company, a co-partnership composed of George M. Rhoades, C. E. Christie and C. Groves, cannot maintain a suit in this State without having first complied with the assumed name statute of the State of Texas, known as Chapter 73, Acts of the Thirty-seventh Legislature. The courts of Texas will not enforce a contract made in violation of the penal laws of this State. Acts of 37th Leg., p. 142, Art. 5950½, Sayles' Sup., 1922; Acme Drilling Co. v. Gorman Oil Syndicate, 249 S. W., 1003; Vol. 13, C. J. p. 421, Sec. 352, Sup. 2; Elliott on

Contracts, Vol. 2, p. 31, Sec. 672; Elliott on Contracts, Vol. 1, p. 641, Sec. 267; Loving v. Place, 266 S. W., 231; Hunter v. Patterson, 173 S. W., 120, 162 Ky., 769, L. R. A., 1915D, 987 and notes; Texas Law Review, Vol. 2, No. 2, February, 1924, pp. 178-182 (specially p. 179).

*Maco Stewart, Bonner & Bonner* and *T. R. Boone,* as *amici curiae* filed briefs and argument in support of the position of appellant.

*Brown & Graham,* for appellees, cited, contra: Acts of 37th Legislature, p. 142; Secs. 5112-5114, Compiled Statutes of Nebraska, 1922; Schneider v. Patterson, 38 Neb., 600, 57 N. W., 398; Houfek v. Held, 75 Neb., 210; Railway Co. v. Carlock, 75 S. W., 931; Watkins Land Mort. Co. v. Thetford, 43 Texas Civ. App., 536, 96 S. W., 72; Simpkins on Contract and Sales, 3d Ed., p. 388; National Bank v. Matthews, 98 U. S., 629; National Bank v. Whitney, 103 U. S., 99; Pratt v. York, 248 S. W., 492; Frost v. Plumb, 40 Conn., 112, 16 Am. Rep., 18; Elliott on Contracts, p. 166, footnote.

*C. C. DeMontel* and *Kay, Aiken & Smedley,* as *amici curiae,* filed briefs and arguments in support of the position of appellees.

MR. JUDGE BISHOP delivered the opinion of the Commission of Appeals, Section A.

The Court of Civil Appeals of the Second Supreme Judicial District certifies the question "whether or not the trial court erred in overruling the plea in abatement presented by appellant" in this case under the following statement:

"On September 29, 1922, G. M. Rhoades, C. E. Christie and C. Groves, as members of the co-partnership doing business under the name of Rhoades Drilling Company, instituted this suit against the Paragon Oil Syndicate (a common law company), John F. Nein, trustee, E. H. Nein, trustee, John F. Nein and E. H. Nein, R. M. Roddie, E. A. Gatlin, C. E. Snively and F. W. Whitney, as individuals, to recover the sum of $2,559.53, alleged to be due the plaintiffs for drilling two oil wells. It was alleged that the wells were drilled under a contract with the defendants, which was entered into during the year 1922, and that they were drilled on two surveys located in Young County.

"It was further alleged that the plaintiffs were doing business in Young County under the firm name of Rhoades Drilling Company, and that the amount sued for became due July 1,

1922. When the suit was filed an attachment was sued out and levied upon certain property alleged to belong to the defendants for jurisdictional purposes, upon allegations that all the defendants were non-residents of the State.

"The defendants filed a plea in abatement, in which they prayed that the suit be abated and dismissed because the business transacted by plaintiffs, which was made the basis of their suit, was in violation of Chapter 73, Acts of the Thirty-seventh Legislature (Acts of 1921), in that said business was transacted without first filing for record in the office of the county clerk of Young County a certificate setting forth the name under which said business was being conducted, together with the names and postoffice addresses of the persons conducting the same, as required by the provisions of that act, the said name of Rhoades Drilling Company being an assumed name and not disclosing the names of the persons who were transacting the business thereunder.

"Upon a hearing of the plea in abatement, counsel entered into the following agreement of facts pertaining thereto:

" 'It is agreed that no assumed name affidavit or certificate showing the partnership of the Rhoades Drilling Company was filed in the County Clerk's office of Young County, Texas, until May 3d, 1923. It is further agreed that the Rhoades Drilling Company have been operating in Young County, Texas, for a period of three years and that they were so operating at the time of the alleged contract in this suit. It is further agreed that the County Deed Records of Young County, Texas, and Mechanics' Lien Records and Chattel Mortgage Records show that the Rhoades Drilling Company was a partnership composed of George M. Rhoades, C. E. Christie and C. Groves, which individuals composed the firm of Rhoades Drilling Company.'

"The plea in abatement was thereupon overruled by the court, and upon the trial of the cause upon its merits judgment was rendered for the amount sued for in plaintiff's favor against all the defendants and the American Surety Company of New York, surety on the replevin bond filed by the defendants, and under which the property attached was replevied by the defendants. All the defendants in that judgment have appealed, and that appeal is now pending in this court and undisposed of.

"The first error assigned is to the action of the trial court in overruling the plea in abatement, which, as noted, is based on the statute referred to above. That statute seems to be substantially the same as a Kentucky statute with the exception that the latter provides for a jail sentence in addition to a fine for a

violation thereof, while in our statute the penalty is a fine only. The Kentucky statute appears in Hunter v. Big Four Auto Company, 173 S. W., 120; Warren Oil & Gas Co. v. Gardner, 212 S. W., 456; Acme Drilling Co. v. Gorman Oil Syndicate, 249 S. W., 1003. All of those decisions were by the Court of Appeals of Kentucky. All of the Kentucky cases just noted, as well as others cited in those opinions, are to the effect that a failure to comply with the Kentucky statute renders the contract unenforcible in the courts by the persons who are doing business in violation of the statute."

The provisions of Chap. 73, Acts of the Thirty-seventh Legislature, material to the discussion of this question are as follows:

"Section 1. No person or persons shall hereafter carry on or conduct or transact business in this State under any assumed name or under any designation, name, style, corporate or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business unless such person or persons shall file in the office of the clerk of the county or counties in which such person or persons conduct, or transact or intend to conduct or transact such business, a certificate setting forth the name under which such business is or is to be conducted or transacted, and the true or real or full name or names of the person or persons conducting or transacting the same, with the postoffice address or the addresses of said person or persons. Said certificate shall be executed and duly acknowledged by the person or persons so conducting or intending to conduct said business in the manner now provided for acknowledgment of conveyance of real estate.

"Sec. 2. Persons now owning or conducting such business under an assumed name or under any such designation referred to in Section 1, shall file such certificate as hereinbefore prescribed, within thirty days after this Act shall take effect, and persons hereinafter owning, conducting or transacting business aforesaid shall before commencing said business file such certificate in the manner hereinbefore prescribed.

"Sec. 3. Whenever there is a change in ownership of any business operated under any such assumed name as set out in Section 1 hereof, the person or persons withdrawing from said business or disposing of their interest therein, shall file in the office of the clerk of the county or counties in which such business is being conducted and has a place or places of business, a certificate setting forth the fact of such withdrawal from or disposition of interest in such business; and until he has filed

such certificate he shall remain liable for all debts incurred in the operation of said business, which certificate shall be executed and duly acknowledged by the person or persons so withdrawing from or selling their interest in said business in the manner now provided for acknowledgment of conveyance of real estate.

\*    \*    \*    \*

"Sec. 6.    Any person or persons owning, carrying on or conducting or transacting business aforesaid, who shall fail to comply with the provisions of this Act, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars, and each day any person or persons shall violate any provisions of this Act shall be deemed a separate offense.

"Sec. 7.    The fact that there is now no law providing for the registration of the names of persons doing business under assumed or fictitious names, and that the absence of such law impairs the stability of credits in the State, creates an emergency and imperative public necessity requiring that the Constitutional rule that bills shall be read upon the three several days shall be suspended, and it is hereby suspended, and this Act shall take effect from and after its passage, and it is so enacted."

Where the statute prohibits the sale of property, any contract of sale made in violation thereof is void, and for this reason neither party to the contract can enforce its terms.    The contract is unenforceable because it is not binding on the parties thereto, and not because such parties are prevented from instituting suits in the courts to enforce their rights.    It is because they have no rights.    The sale of intoxicating liquors, except for certain specified purposes and made in accordance with certain specified regulations, is prohibited by law.    Hence, a contract of sale in violation of this law is absolutely void.    Such contract is unenforceable because it is not binding on either of the parties thereto, and not because the parties are prohibited from litigating their rights in the courts.    And so any contract which the statute prohibits and thereby renders absolutely void cannot for this reason be enforced.

The Legislature may, under the public welfare clause of our Constitution, enact laws regulating the conduct of lawful business in this State.    It may, in the interest and for the protection of the public prescribe the mode or manner in which business may be conducted or transacted.    So it may provide that no lawful business may be conducted under an assumed name unless the person or persons so conducting same shall file a cer-

tificate in the office of the county clerk showing the identity of the person or persons engaged in such business. The inhibition here is not against the transaction and conduct of business. The Legislature could not do that. It is against the use of an assumed or fictitious name without filing the certificate—against the manner of conducting business.

This legislation, being in the interest and for the benefit of the public, the violation of the law by persons would not render their contracts in the conduct of their business void so that neither of the parties to such contracts could enforce them or maintain an action for a breach thereof. The public is entitled to protection by having contracts enforced, or an action for breach.

It is clear from the provisions of this Act that the contracts made under the assumed or fictitious name in violation thereof should not be considered void. For it is provided that should one engaged in such business sever his connection therewith, he would remain liable for all debts contracted in the transaction of such business until he had filed with the county clerk a statement showing that he was no longer engaged in the business. Should anyone suffer an injury by reason of his dealings or contract with a person or persons violating this law, we have no doubt that he could, on proper showing, insist on relief even to the extent of avoiding performance of his contract, where this is shown to be necessary to protect his rights. However, where no injury is shown, we can conceive of no good reason why he should not be required to comply with the terms of his contract. In this sense, and in this sense only, it may be said that the contract is voidable.

The rule, then, that a void contract cannot be enforced is not applicable here, for the contract involved in this suit is not void. The violation of this law is only incidental to the contract and does not render it invalid.

If appellees are without remedy it is not on account of the invalidity of their contract, but because they have violated the law, and as punishment for their offense, they are denied the privilege of appealing to the courts to enforce their contracts. Section 13 of the Bill of Rights, being Article 1 of our Constitution, provides that "excessive fines" shall not be "imposed, nor cruel or unusul punishment inflicted," and that "all courts shall be open; and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." The punishment provided in this Act is a fine of $25 to $100 for every day the business is conducted under an

assumed or fictitious name without complying with the require-
ment to file the certificate. There is no express provision that
in addition to this penalty the offender shall be denied the right
to maintain suits in the courts of this State. The inhibition
of the act of conducting a business in a prohibited manner does
not evidence an intention to close the courts to those violating
it, and deny the right to maintain suits where the subject mat-
ter is directly connected with the conduct of such business.

The right to engage in business in an assumed name is a
privilege the law of this State, prior to this enactment, has per-
mitted. This Act recognizes this right, and concedes the privi-
lege. It, however, regulates the privilege of conducting busi-
ness in an assumed name by requiring that the certificate be
filed. It does not declare the use of the assumed name wrong-
ful. It permits it. Realizing that the assumed name may be
used in a manner harmful to the public unless the identity of
the person or persons engaged in the business is known, it
requires a disclosure. The assumed name itself is not denounced
as harmful. The fact that harm may result from a wrongful
use of the name is what induced the Legislature to regulate its
use. The regulation requires the certificate and nothing more.
To enforce this requirement a specific penalty is imposed. It is
not the use of the name which constitutes the crime, but the
failure to comply with the regulatory requirement. The use
of the name in a written contract would disclose no element of
crime, for the assumed name is only incidental to what the law
has denounced as criminal. The crime has no necessary direct
relation to the business transacted. The contract entered into
in the conduct of the business does not constitute the crime,
and the law will not presume that harm has resulted from the
contract. So the rule that one who has violated the law is not
permitted to recover on evidence which shows his crime in
connection with the subject matter in litigation is not appli-
cable here.

In a case similar to this, Bassen v. Monckton, 274 S. W., 404,
the Supreme Court of the State of Missouri, in discussing the
effect of a statute of that State providing that "it shall be
unlawful for any person to engage in or transact any busi-
ness   *   *   *   under a fictitious name without first register-
ing same with the Secretary of State," uses the following lan-
guage, which is applicable here, to wit:

"Natural persons have natural rights of which no legislative
act can deprive them. The plaintiffs in this case had a natural
and constitutional right to sell lumber and to transact the busi-

ness which they did transact. It is not contended that they violated any law in selling lumber and materials and in performing the labor for defendants. The statute under consideration does not prohibit them from engaging in the business they were engaged in; if it did, it would be unconstitutional. State v. Julow, 129 Mo., loc. cit., 173, 31 S. W., 781, 29 L. R. A., 257, 50 Am. St. Rep., 443. Further, the statute does not prohibit them from adopting a fictitious name and trading under it. The statute requires only that they register the fictitious name if they use one. It prohibits them from using it without registration, and provides a fine for failure to comply. * * * *

"From the wording and apparent purpose of the statute we hold that it is a penal statute, and that it does not restrict the rights of the plaintiffs to contract and to recover for value rendered."

See also Sagal v. Fylar, 89 Conn., 293, L. R. A., 1915-E, 747, 93 Atl., 1027, Model Heating Co. v. Magarity, 25 Del., 459, 81 Atl., 394, L. R. A. 1915-B, 665; Wood v. Erie Ry. Co., 72 N. Y., 196, 28 Am. Rep., 125; Gay v. Seibold, 97 N. Y., 472, 49 Am. Rep., 533; Fritts v. Palmer, 132 U. S., 282, 33 L. Ed., 317; Schneider v. Patterson, 38 Neb., 680, 57 N. W., 398.

It is true that the language used in the statutes of North Carolina, Indiana, Michigan and Kentucky is in some sections practically word for word like that used in the statute here under consideration; that those statutes were enacted prior to this one; and that under those statutes the courts of those states hold that no recovery can be had on a contract made by a person or firm while doing business under an assumed name in violation thereof by the person or firm violating them. Courtney v. Parker, 173 N. C., 479, 92 S. E., 324; Horning v. Gill, 188 Ind., 332, 116 N. E., 303; Cashin v. Pliter, 168 Mich., 386, 134 N. W., 482; Ann. Cases, 1913-C, 697; Hunter v. Big Four Auto Co., 162 Ky., 778, 173 S. W., 120, L. R. A., 1915-D, 987; Kozy Theater Co. v. Love, 191 Ky., 595, 231 S. W., 249; Warren Oil & Gas Co. v. Gardner, 184 Ky., 411, 212 S. W., 456; Acme Drilling Co. v. Gorman Oil Syndicate, 198 Ky., 576, 249 S. W., 1003. Other states had enacted similar statutes, which, though not practically word for word in the language of this one, have been given a different construction by the courts of the states enacting them. For this reason, we do not think we would be warranted in holding that this statute was adopted from the four states above named, and that the judicial construction already placed

on them by the highest courts of those states accompanies it and should be treated as incorporated therein. Even if this rule should otherwise obtain, we are of opinion that it is inapplicable here in view of the above Constitutional provision, and because it is contrary to the spirit and policy of the jurisprudence of this State. 25 R. C. L., 1073 and 1074. We are also of opinion that the construction given their statutes by the courts of North Carolina, Indiana, Michigan, and Kentucky is erroneous and that its application here would·lead to a denial of substantial rights.

We recommend that the answer to the question certified be that the trial court did not err in overruling the plea in abatement.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

<em>C. M. Cureton,</em> Chief Justice.