Commission of Appeals of Texas, Section B.
Feb. 1, 1933.

## GORMAN et al. v. GAUSE et al.
### No. 1386—5988.

Commission of Appeals of Texas, Section B.
Feb. 1, 1933.

C. C. Gillespie, of Memphis, Tenn., Neal A. Brown, of Edinburg, and Seabury, George & Taylor, of Brownsville, for plaintiffs in error.

R. M. Bounds, of McAllen, and Graham, Graham & Graham, of Brownsville, for defendants in error.

LEDDY, J.

On April 29, 1918, John P. Gause and Mamie Cato, in contemplation of their marriage, entered into a purported prenuptial agreement. Portions of the agreement pertinent to this controversy are as follows:

"They, Jno. P. Gause and Mamie Cato, if said marriage so intended shall be had and solemnized, do waive and declare void all the community laws of the State of Texas, so far as the property they now own or may hereafter become possessed of is concerned. They also contract and agree with each other that each may sell and dispose of the property now owned by them, or may hereafter acquire, as their separate estate free from the claims or any rights, demands or interest that the laws of Texas, may have given the other in such property, if this agreement and said contract had not been entered into and this agreement executed in lieu of and in the room of the provision of said laws, and hereby declair that no property so acquired will be community property, but belong to the party so acquiring same, separate from the other, except as herein agreed and provided. * * *

"In the event of the death of the said Jno. P. Gause, and should the said Mamie Cato survive him, it is agreed that an account of what property or estate they both have be taken in account, and divided into three equal parts, one-third to be given to his said daughter, Margaret, or her heirs, one-third to his said daughter, Minnie Elma, or her heirs, and one-third to the said Mamie Cato; but in the event she should depart this life, that part of the estate of Jno. P. Gause, that went to make up her one-third in said division, shall be returned to his said children or their heirs in equal moeties.

"In the event of the death of Mamie Cato, and she be survived by Jno. P. Gause, all of her property, both real and personal, shall be used and controlled and had for his benefit and use during his natural life, and after his death to revert to the heirs of Mamie Cato; and upon the death of Mamie Cato, if he should survive her, the said Jno. P. Gause agrees to probate her estate in the probate court where they may be at the time of her death, and return therein inventory of her estate, but in no event will he be required to execute a bond for such estate or such administrator, that being expressly waived by Mamie Cato.

"That upon the death of Jno. P. Gause, if Mamie Cato should survive him and become possessed of a part of his estate in the division as aforesaid, she shall invest such part of said estate in land or other staple property, taking the deed in her own name for life, remainder to Margaret and Minnie Elma Gause or their heirs."

At the time of the marriage each party owned property of the value of approximately $8,000. During their marriage there was acquired by their joint efforts a community estate of the estimated value of $70,000.

With the exception of an apartment house situated in the city of Mercedes, all of the realty accumulated during the marriage was taken in the name of John P. Gause. The lot upon which the apartment house was constructed was acquired by Gause during the marriage. It was deeded by him to his wife through the medium of a trustee. A vendor's lien was retained to secure the purchase price represented by a note for $2,699, which was executed by the wife, payable to the trustee, and by him indorsed to the husband. The sum paid for this property was its fair value of $2,500, plus $199 for drawing plans of an apartment house thereafter erected thereon.

On March 7, 1928, the said John P. Gause and his wife executed what purported to be their joint and mutual wills, in which it was recited that said parties had theretofore in

a marriage contract agreed that all of the property each owned at that time and that which each might acquire during their marriage would be the separate property of the one so acquiring the same, and that it was the will of each that the survivor take all of the property, both real and personal, outstanding in their name, and no other. The will contained this further provision: "It is further our will and desire and we do here now bequeath to the legal heirs or legatees, if any, of the one departing this life before the other, all of our right, title and interest, in whatever kind and nature, in and to the property, of every kind and nature, that was seized and possessed of by the first deceased of us, as the case may be."

The will contained the further provision that should Mamie C. Gause survive John P. Gause it was his desire that she use the homestead and household furniture during her life, with the remainder to his heirs.

On June 29, 1929, John P. Gause died, and on the 10th day of September, 1929, his will was duly admitted to probate on the application of Robert E. Kirkpatrick; he being named in said will as independent executor thereof.

On July 22, 1929, during the pendency of the application to probate the will, Mamie C. Gause filed in said proceeding notice of her intention not to claim anything under said will, and electing to take her property rights under the laws of this state.

Kirkpatrick, as independent executor, duly returned an inventory and appraisement of the estate of John P. Gause, which was approved on December 2, 1929. This inventory showed two pieces of property as separate property of John P. Gause valued at about $8,800. There were some 21 items of real estate listed as community property. The apartment house which was conveyed by Gause to his wife during their marriage was not listed in the inventory; but the note for $2,699 given by the wife to her husband as the purchase price of the lot was listed among the claims due the estate.

This suit was instituted by Mamie Gause Gorman and Minnie Elma Gause, the only heirs at law of John P. Gause, to establish their right to all of the property owned by John P. Gause at the time of his marriage, as well as all of the property accumulated during the marriage, with the exception of the apartment house and the homestead then occupied by Mamie C. Gause, which it was conceded she was entitled to use during her lifetime.

The trial court concluded that Mamie C. Gause was not bound by the antenuptial contract, nor by the joint mutual will, or both contract and will construed together, and that she was not estopped from setting up her claim to a one-half interest in the community estate of John P. Gause, deceased. These conclusions resulted in a judgment awarding Mamie C. Gause a one-half interest in the community estate of John P. Gause, deceased, and one-half of said estate to his two daughters. In the judgment the note given John P. Gause by Mamie C. Gause as the purchase price for the apartment lot was canceled, and this property was treated as a part of the community estate. The judgment of the trial court was affirmed by the Court of Civil Appeals [36 S.W.(2d) 279].

The record exhibits a conflict as to whether the purported marriage agreement was executed before or after the marriage of John P. Gause and Mamie Cato. It seems that the parties entered into a written stipulation as to certain facts, with the agreement that this stipulation could be offered in evidence upon the trial. It contained a reservation that the parties might introduce evidence upon matters not specifically agreed upon. In this stipulation it was recited that the purported antenuptial agreement was executed on April 29, 1918, and that the marriage of the parties occurred on May 1, 1918. Upon the trial defendants in error were permitted, over the objection of plaintiffs in error, to offer testimony showing that said agreement was in fact executed on May 1, 1918, within a few hours after the marriage ceremony had taken place.

■ Under our view of the law applicable to the facts of this case it is immaterial whether this agreement was executed before or after the marriage. In either event, it was a void and unenforceable agreement. By it the parties sought to fix the status of property thereafter to be acquired during their marriage different from that prescribed by the Constitution and laws of this state. It has been repeatedly held by our courts that a husband and wife do not have the power, by mere agreement, made in advance, to change the status of community property yet to be acquired to that of the wife's separate property. Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799, 802; Kellett v. Trice, 95 Tex. 160, 66 S. W. 51; Cox v. Miller, 54 Tex. 16; Green v. Ferguson, 62 Tex. 529; Brokaw v. Collett (Tex. Com. App.) 1 S.W.(2d) 1090; Armstrong v. Turbeville (Tex. Civ. App.) 216 S. W. 1101.

The same reasons which would deny the power of the husband and wife by contract to set at naught the laws of this state defining and fixing the status of property acquired during the marriage would operate to prevent their doing so by antenuptial contract, unless, as argued by plaintiffs in error, such a contract be authorized by the provisions of article 4610, R. S. 1925. This article reads as follows: "Parties intending to marry may enter into such stipulations as they may desire, provided they be not contrary to good morals or to some rule of law; and in no

case shall they enter into an agreement, or make any renunciation, the object of which would be to alter the legal orders of descent, either with respect to themselves, in what concerns the inheritance of their children or posterity, which either may have by any other person, or in respect to their common children; nor shall they make any agreement to impair the legal rights of the husband over the persons of their common children. No matrimonial agreement shall be altered after the celebration of the marriage."

·Under the very terms of this statute a contract of the nature of that under consideration is expressly prohibited. While certain agreements are authorized by this act to be made in contemplation of marriage, they are specifically limited to ones not "contrary to good morals or to some rule of law." Certainly the Constitution and statutes defining the status of property acquired during marriage constitutes a "rule of law." The contract in question attempted to declare that property thereafter acquired by the parties under circumstances which the laws of this state would clothe with the status of community property should by virtue of the contract become the separate property of the one acquiring it.

In Arnold v. Leonard, supra, our Supreme Court declared that it was beyond the power of the Legislature to enlarge the separate property of the wife from that defined in the Constitution of this state. In discussing this question the court said: "Hence, when the Constitution says that as to property, not owned or claimed by the wife at marriage, it becomes her separate property when acquired in one of three specified modes, the Legislature is prohibited from saying that property acquired after marriage in some other mode may also ·become the wife's separate property."

If the Legislature is powerless to enact a law enlarging the wife's separate estate beyond its constitutional limits, it is clear that the provisions of the organic law cannot be set aside and such enlargement·accomplished by the mere agreement of the parties made in contemplation of marriage. Groesbeck v. Groesbeck, 78 Tex. 664, 14 S. W. 792.

██ It has been uniformly held by the decisions of our courts that a contract cannot impair the validity of any law (Hartford Fire Ins. Co. v. G. H. & S. A. R. Co. (Tex. Com. App.) 239 S. W. 919, American Refining Co. v. Gasoline Products Co. (Tex. Civ. App.) 294 S. W. 967), nor control or limit the provisions of a statute. Raywood Rice, Canal & Milling Co. v. Erp, 105 Tex. 161, 146 S. W. 155; Converse v.. Miller, 33 Tex. 216; Shelton v. Marshall, 16 Tex. 344; Heirs of Hunt v. Heirs of Robinson, 1 Tex. 748; Texas Employers' Ins. Ass'n v. Tabor (Tex. Com. App.) 283 S. W. 779; Hennessy v. Automobile Own-

ers' Ins. Ass'n (Tex. Com. App.) 282 S. W. 791, 46 A. L. R. 521; Paragon Oil Syndicate v. Rhoades Drilling Co., 115 Tex. 149, 277 S. W. 1036.

But it is argued that if we do not hold such an agreement entered into by the parties in contemplation of marriage can be enforced, that provision of the statute (Rev. St. 1925, art. 4612) which authorizes the wife by marriage contract to "reserve to herself any property, or rights to property, whether such rights be in esse or expectancy" can be given no effect. We do not agree that this result follows such a declaration of the rule. We can conceive of many agreements, made in contemplation of marriage, dealing with rights of property in expectancy which would not contravene any provisions of the laws of this state. For instance, it might be agreed by such parties that the husband would convey to his wife one-half of all property thereafter acquired by him by gift, devise, or inheritance, or that a certain portion of the community estate, when acquired, would be· conveyed by him to the wife and made her separate property. Such an agreement would not violate either the Constitution or statutes of this state defining separate and community property of the spouses. Under an agreement of this nature, the property when acquired would take the status given to it by law. It would then be subject to be disposed of in accordance with any prenuptial agreement of the parties. When property has been acquired and its status once fixed as separate or community property as defined by the laws of this state, the husband and wife are at liberty to make such disposition thereof as they please, or as they may have obligated themselves to do in an antenuptial agreement, provided only that the terms of such an agreement do not exceed the limitations specified in the statute authorizing the same.

Plaintiffs in error rely upon the decision of the Supreme Court of California in Snyder v. Webb, 3 Cal. 83, as being directly in point to sustain the validity of the marriage agreement involved in this case. It is true that the court in that case upheld a contract very similar in· its provisions to the one under consideration. An examination of that case, however, reveals that the marriage contract was properly sustained, because the statute of that state expressly authorized the execution of an antenuptial contract fixing the status of property different from that defined by law. The statute construed by that court defined the separate and community property of the husband and wife. The very act defining the same contained this clause: "In every marriage hereafter contracted in this State, the rights of husband and wife shall be governed by this act, unless there is a marriage contract containing stipulations contrary thereto." Practice Act, § 14. It

is thus seen that the California statute defining the status of property as community or separate applied only where the parties had not by a marriage contract stipulated to the contrary. The parties were therefore free to stipulate as they might desire as to the status of property to be acquired during the marriage relation. Our statute confers no such privilege. On the other hand, it expressly prohibits an antenuptial contract's containing any stipulation in reference to the property rights of the parties contrary to the laws of this state.

■ The joint and mutual will of John P. Gause and wife cannot be given effect as the joint and mutual will of the parties while one of the parties survives, as it is subject to be revoked by the survivor. Wyche v. Clapp, 43 Tex. 543.

■ The will shows upon its face that it was made in pursuance of a void contract. It cannot, therefore, be given the effect of a contract or agreement to make mutual wills which might authorize a court of equity to establish a trust upon the estate of the defaulting party. Wyche v. Clapp, supra.

It is claimed that Mamie C. Gause, after her husband's death, accepted benefits under their joint and mutual will, and was therefore estopped to deny the obligations of said will or to claim rights inconsistent therewith. This contention seems to be based upon the evidence showing that Mrs. Gause retained possession of the apartment house and collected rents thereon from June 11, 1929, the date of her husband's death, to some time prior to the trial of this case. It is shown that she filed notice in the probate court on July 22, 1929, that she did not claim under the will, and elected to take her property rights under the statutes and laws of this state. Mrs. Gause made full accounting of the rents collected by her from the apartment house. All of such rents were shown without dispute to have been applied on the expense of operating the apartment and to discharge the monthly payments on the loan against the property. In fact, the rents collected by her were insufficient by several hundred dollars to meet the payments on the loan and take care of the expenses of operating the apartment.

■ Mrs. Gause did not testify as a witness on the trial of this case. Kirkpatrick, the executor, testified that he did not inventory this property as belonging either to the community or separate estate of John P. Gause. He said that he advised with a number of lawyers, but could not reach any satisfactory conclusion about listing this property. He does not claim that he made any demand of Mrs. Gause for the possession of the property, or that she refused to surrender possession thereof. For aught that appears from the record, Kirkpatrick of his own volition failed and refused to list the property in the inventory, or to take possession of it and collect the rents. Under such circumstances, it was necessary for some one to collect the rents and look after this property. The executor's failure to do so was not shown to be through any fault on the part of Mrs. Gause. Under such circumstances, we do not think her action in collecting the rents and applying them to the expense of operating the apartment and to discharge the indebtedness against the same, which was held by the estate of John P. Gause, was sufficient as a matter of law to constitute an election upon her part to take under the will. This is especially true in the light of the fact that with the exception of about six weeks all of the rents were collected after she had filed written notice of her election not to take under the will, and that she would insist upon her community rights.

■ An election to take under a will may be either express or implied. When not express, it is a question of intention which must be determined in the light of all the facts and circumstances surrounding the transaction. Mayo v. Tudor's Heirs, 74 Tex. 474, 12 S. W. 117; Dunn v. Vinyard (Tex. Com. App.) 251 S. W. 1043; Owens v. Andrews, 17 N. M. 597, 131 P. 1004, 49 L. R. A. (N. S.) 1072, 1108 and note.

It affirmatively appears that no rights of third parties have intervened, and that no injury has resulted to any third party or to the heirs of John P. Gause because of the collection of these rents by Mrs. Gause. If the executor had taken possession of this property and collected the rents thereon, he would have been compelled to have made such disposition of the same as was made by Mrs. Gause; that is, to pay the expense of operating the property and to apply the balance to the payments due on the loan against the property.

■ Under the state of facts disclosed by this record, the question as to the intention of Mrs. Gause to accept under the will was one of fact to be determined by the trial court. That court found that she was not estopped by her conduct in the premises. There is ample evidence to sustain such finding, and the same is therefore binding upon this court.

Gertrude Overbey, through counsel for defendants in error, has filed a motion in this court suggesting the death of Mamie C. Gause; such death occurring subsequent to the filing of the application for writ of error in this court. It is also shown in such motion that the petitioner in cause No. 1297 in the probate court of Hidalgo county was appointed and has duly qualified as administratrix of the estate of said Mamie C. Gause,

deceased. The administratrix's request to be substituted as defendant in error in the place of Mamie C. Gause is granted.

We conclude that the judgment of the Court of Civil Appeals affirming the judgment of the trial court should be affirmed, and we so recommend.

CURETON, C. J.

The judgments of the district court and of the Court of Civil Appeals are affirmed.