## MINARDUS v. ZAPP.

### No. 8596.

Court of Civil Appeals of Texas. Austin.

Jan. 5, 1938.

Rehearing Denied Jan. 19, 1938.

Moss & Moss, of LaGrange, for appellant.

C. C. Jopling, of LaGrange, for appellee.

BLAIR, Justice.

Appellee sued appellant to recover $364. He alleged that he enlisted in the Civilian Conservation Corps, herein referred to as CCC, and agreed to make an allotment of $22 per month out of his $30 per month compensation to appellant, with the understanding that he would hold the money in trust and pay it to appellee when he returned from the CCC camp; which appellant refused to do upon demand of appellee. Appellant denied making the agreement; but alleged that, if it were made, it was unenforceable because in violation of the law and rules and regulations controlling the CCC, and contrary to the public policy therein expressed. The jury found that the agreement was made, and judgment was accordingly rendered for appellee.

Sections 585 to 590 of title 16, U.S.Code, 48 Stat. 22, 16 U.S.C.A. §§ 585 to 590 note, authorized the establishment of the CCC and provided that the President of the United States should promulgate rules and regulations making the act effective, which he did. The Department of Labor was named as the agency for selecting the men to be enlisted in the CCC camps. Bulletin No. 3, Handbook for Agencies Selecting Men for Emergency Conservation Work, as revised September 15, 1934, and under which appellee enlisted, provided in part as follows:

"Each man will receive subsistence, clothing, and medical attention, in a work camp, plus a minimum cash allowance of $30 per month, most of which he will allot to his dependents at home. * * *

"Selection is being primarily made from physically fit unemployed unmarried men between the ages of 18 and 25, * * * who have dependents, and who wish to allot to these dependents a substantial portion of the $30 minimum cash allowance. * * *

"Dependents may be dependents either of blood or obligation. For example, a young man who has been living with an unrelated family for some years and who is considered a member of the family and feels an obligation to contribute to its support may in the discretion of the selecting agency be considered eligible. * * *

"Each man will allot an adequate amount of his cash allowance to his dependents. * * *

"Since emergency conservation work is a relief measure, the return of allotment money to men in camp would defeat its purpose. This practice is therefore prohibited, and enrollees who receive such money from their allottees will be subject to discharge. * * *

"The selecting agency may in its discretion give preference to a man who wishes to allot $25 as against a man who wishes to allot a smaller amount.

"Only those are eligible for enrollment who have made allotments to those who

are actually dependent upon them, either by blood or obligation. * * *

"Allotments to trustees or to persons unknown to the enrollee are prohibited."

The rules further interpret eligibility of selectees and give a reason "why first selection is made from lists of needy unemployed" with dependents, as follows:

"Finally, when the volume of need is so great and relief funds are so inadequate to the need, it seems proper to use these cash allowances to take care of some families now receiving relief, thus setting free these relief funds for the care of other families who are in need. * * *

"If in any community there are not enough voluntary enrollments from well qualified men in families on the relief lists, then selection may be made from other unemployed men who conform to the eligibility requirements as stated herein."

Appellee was an unemployed unmarried man, who had no dependents. He was 23 years of age. His parents died when he was a very small child and an uncle reared him until he was 21 years of age. This uncle lived in Fayette county, and no reason was given as to why he was not named as allottee. For some 3 months prior to enlistment in the CCC he made his home with appellant on appellant's farm. He did chores for his subsistence, but a part of the time was paid for picking cotton. Appellant was not on relief nor dependent on appellee in any manner. Clarence Schwake was case worker Fayette county relief work, in which county appellee resided. He investigated appellee and recommended his application for enlistment in the CCC to Koenig, administrator, who approved the application. Concerning the agreement of appellant to return the allotment money to appellee: Schwake testified as to what was said in Koenig's office when all parties were present, as follows:

"When Mr. Koenig brought up this matter, he stated that the boy had no one to make the allotment to. Asked our opinion about the case, stating that the applicant was an orphan boy and had lived with Mr. Minardus for the last several months. Wanted to know if we didn't think that it would be advantageous to send him to the CCC camp.

"There was an agreement, it seems, between the two (Zapp and Minardus), to the effect that Minardus was to keep some of the allotment money for the boy and which was to be paid to Zapp when he got back out of the camp. Mr. Minardus was to return to Zapp some of this money. I don't know how much.

"In an ordinary case, he (the appellant) would not be able to make such an arrangement, but it was permitted in cases of the kind similar to the Zapp case."

Koenig did not testify in this case.

Appellant sent appellee $10 on request while he was in the CCC camp. The balance of the $22 per month allotment by appellee to appellant is the subject-matter of this suit.

We have reached the conclusion that the agreement with appellant to hold the allotment money in trust and to return it to appellee when he returned from the CCC camp is unenforceable by the courts, because in violation of the above-quoted provisions of the law and rules and regulations controlling eligibility of men selected for the CCC camps. A contract is illegal where it is made in violation of a statute, or a regulatory rule making effective such statute, or where it is contrary to public policy, or where a part of the agreement is to use the subject-matter of the contract, or a part of it for an unlawful purpose. American Natl. Ins. Co. v. Tabor, 111 Tex. 155, 220 S.W. 397; Paragon Oil Syndicate v. Rhoades Drilling Co., 115 Tex. 149, 277 S.W. 1036. Such a contract is unenforceable although it is supported by a consideration. Miller v. Babb, Tex.Com.App., 263 S.W. 253. It is very doubtful if the contract to repay the allotment money to appellee had a consideration. If so, the test of illegality in respect to consideration is that the thing contracted to be done as a consideration cannot be done without violating the statute or rules or regulations making it effective. Featherston v. Boxberger, Tex. Civ.App., 255 S.W. 998.

The agreement is clearly in violation of the rules which prohibit the making of "allotments to trustees." It was also in violation of the rule defining "obligation" dependents to be, "for example, a young man who has been living with an unrelated family for some years and who is considered a member of the family and feels an obligation to contribute to its support may in the discretion of the selecting agency be considered eligible." The undisputed evidence showed that appellant and his family were not "obligation" dependants of appellee. He only lived with appellant 3 months, and a part of the time

he was paid for his service; and the remainder of the time he earned his subsistence by doing chores. The agreement also made an unlawful use of its subject-matter, the allotment money, by authorizing its payment to a nondependent and to a trustee, and by requiring its repayment to appellee. Thus appellee without reason would have been paid more than selectees who had dependents; and the agreement defeated the public policy to require allotments by each selectee so as to grant relief to dependents of selectee and to release relief funds paid to such dependents' to "use for the care of other families who are in need." This public policy was repeated over and over in the rules for agencies selecting men for CCC camps. The agreement also clearly defeated the statute and the President's rules and regulations, which provide that "each man will receive subsistence, clothing, and medical attention, in a work camp, plus a minimum cash allowance of $30 per month, most of which he will allot to his dependents at home."

The fact that appellant, equally guilty of making the illegal contract with appellee, will be permitted to retain the allotment money as between him and appellee, is not material here. The right of appellant to receive and retain the benefits of the illegal contract is not before this court, but is a matter for the federal government to rectify. The rule is settled that a contract of this sort is unenforceable in the state courts, because it is not binding upon, and confers no rights upon, the parties thereto; and because the making of the unlawful contract to hold the allotment money in trust for appellee is no consideration for the promise to pay it to appellee. Paragon Oil Syndicate v. Rhoades Drilling Co., supra; Seeligson v. Lewis & Williamson, 65 Tex. 215, 57 Am. Rep. 593; Scroggins v. Furst & Thomas, Tex.Civ.App., 9 S.W.2d 405, writ ref.

Nor did appellee allege or prove any facts which would authorize his selection and the agreement to return the allotment money· to him under the provision that, "if in any community there are not enough voluntary enrollments' from well qualified men in families on the relief 'lists, then selection may be made from other unemployed men who conform to the eligibility requirements as stated herein."

Nor did appellee allege or prove that the thing to be done under the agreement, repayment of allotment money to him, is merely regulated, and not prohibited, or could have been done by complying with the statute or rules and regulations controlling the selection of men in the CCC camps, and under the rule that such a contract would not have been invalid. Featherston v. Boxberger, Tex.Civ.App., 255 S.W. 998. No provision is found in the statute or rules and regulations thereunder which would give discretionary authority to the selecting agencies to allow such a contract as is sought to be here enforced to be made. They did not authorize the making of the contract, but merely knew that some sort of contract was made. No authority exists in the selecting agencies to waive any of the mandatory statutes or rules and regulations controlling the selection of men for the CCC camps.

The judgment of the trial court is reversed and judgment is here rendered for appellant, and that appellee take nothing by his suit.

Reversed and rendered.

## On Appellee's Motion for Rehearing.

On rehearing appellee contends that we erred in holding the contract to repay the money by allottee was in violation of the President's rules and regulations set out in Bulletin No. 3, as revised September 15, 1934, because same was not in evidence. Appellant pleaded some of the applicable provisions of said bulletin as set out in our opinion; and when he offered it and other later revisions of the bulletin in evidence appellee objected, and the court held that it must take judicial notice of all such bulletins; and, after having done so, the court held as a matter of law that the contract in question was not in violation of such rules and regulations. Since the court appears to have fully considered and construed the bulletin, the fact that it was not formally admitted in evidence is not material. It is here presented with the record.

It is generally held that state courts must take judicial knowledge of proclamations of the President making effective a federal statute; and of rules and regulations of federal boards and commissions. McCormick & Ray, Texas Law of Evidence, p. 142, § 84.

The motion will be overruled.

Overruled.