**TRADERS & GENERAL INS. CO. v. ROGERS.**

No. 13749.

Court of Civil Appeals of Texas. Fort Worth.

June 3, 1938.

Rehearing Denied Sept. 16, 1938.

Saunders & Williams, of Dallas, and Lightfoot, Robertson & Gano and Dan P. Johnston, all of Fort Worth, for plaintiff in error.

Houtchens & Houtchens, Ardell M. Young, and J. Harold Craik, all of Fort Worth, for defendant in error.

DUNKLIN, Chief Justice.

The Traders & General Insurance Company has prosecuted this appeal from a judgment in favor of J. O. Rogers, under the provisions of the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq. Rogers recovered a judgment for the sum of $7,398.39, as a lump sum settlement for total incapacity to work, as the result of two alleged injuries while working for the New York Bakery, and while repairing and replacing a set of floor scales, by welding one of the doors thereof in the dough-mixing room of the Bakery. The alleged injuries, for which he claimed compensation, were denominated as a wrench in his back and a heat stroke.

His claim for those injuries was presented to the Industrial Accident Board, and by that Board denied. An appeal was duly prosecuted from that order to the District Court, in which the judgment was rendered.

The insurance policy made the basis of plaintiff's suit was issued by the appellant on May 9th, 1933, and by its terms was due to expire on June 17th, 1934, and was in effect at the time of plaintiff's alleged injuries, on June 15th, 1934. The policy recited that it was in renewal of a former policy due to expire June 17th, 1933, at which date the renewal policy should become effective.

These stipulations appear in the policy: "Employer, George Kogan, d. b. a. New York Bakery; address, 513–15 Jennings Street, Fort Worth, Texas; occupation, bakers, clerical, chauffers and their helpers. * * * Present Insurer, Traders & General Insurance Company."

In plaintiff's second amended original petition, on which he went to trial, it is alleged that he was injured while in the discharge of the duties of his employment with New York Bakery, which was operated by George Kogan, individually, as its owner and operator. In an alternative count it is alleged that if plaintiff be mistaken as to the ownership of the bakery by George Kogan, then that said New York Bakery was a co-partnership, composed of George Kogan, Gus Kogan and John Bokoures; that the policy was intended by all parties to cover all employees of the New York Bakery, even though owned by said co-partnership; that the defendant was fully apprised of such ownership and was therefore estopped to claim its policy did not cover employees of the co-partnership. In reply thereto, the defendant filed a general denial, with specific allegations that the policy had been issued to George Kogan as an individual, d. b. a. New York Bakery, upon his application therefor, and denied that it had ever issued a policy to George Kogan, Gus Kogan and John Bokoures, d. b. a. New York Bakery, and had never authorized its agent to do so.

The Insurance Company was doing business in the City of Dallas. Oscar Seligman & Company, doing business in the City of Fort Worth, was its agent, to whom application for insurance was made. The following letter of instruction from the defendant to that agent, introduced in evidence, reads as follows:

"June 15th, 1932.
"Oscar Seligman & Company,
"813 Texas National Bank Building,
"Fort Worth, Texas.
"Reference: Compensation Insurance.
"Gentlemen:
"1. Your Agency Contract with this company provides for the rate of commission you will receive on account of Workmen's Compensation Insurance which is credited to you.

"2. The Contract does not permit you to bind the Company on Workmen's Compensation Insurance risks.

"3. The Supplies sent you do not include Workmen's Compensation Insurance Policies—the supplies do include Applications for Workmen's Compensation Insurance Policies.

"4. Please understand liability of the Traders & General Insurance Company for Workmen's Compensation Insurance can-

not be assumed by any agent whether in the form of verbal promise or written binder.

"5. Your authority, in so far as acceptance of Workmen's Compensation Insurance coverage by this company is concerned, extends only to the taking of information and the filing of this information on proper application forms with this office.

"6. Your clients should be unmistakably advised that the giving to you of information in no wise obligates the company.

"7. This letter is sent in duplicate. Please sign and return the original, keeping the copy for your own file.

"Yours very truly,
"W. B. Shoe, Vice President."

In answer to special issues, the jury found that on June 15th, 1934, the plaintiff, while working as an employee of the New York Bakery, sustained two injuries, in the course of his employment: First, to his back, and second, a heat stroke, as the result of which he was totally incapacitated to work for 144 weeks; that his employer had notice of his injuries when they were sustained; that he had not worked in the same employment for a year preceding his injuries; that the average weekly wage of other employees of the same class as plaintiff, who had worked for one year prior to the time plaintiff sustained his injuries, was $35 per week; and that manifest hardship and injustice will result to plaintiff if such compensation to which he is entitled is not paid to him in a lump sum; that the prior policy, which was renewed by the one in suit. was issued to George Kogan, doing business as the New York Bakery; and that all parties to the renewal contract intended that the renewal policy should cover the employees of the partnership known as the New York Bakery.

Upon these findings by the jury, judgment was rendered in plaintiff's favor for the sum of $7,395.39. Since the finding of $35 per week wages was $2.50 higher than the estimate of any witness, plaintiff offers to remit a sufficient amount of the recovery to cover such excess.

■ The testimony showed without controversy that George Kogan, Gus Gogan and John Bokoures were doing business as a co-partnership, under the firm name of New York Bakery.

The finding of the jury that it was the intention of all the parties to the contract that the policy of insurance was intended to cover all the employees of the partner-

ship known as the New York Bakery, was not without sufficient support in the evidence, and in plaintiff's pleadings, as insisted by appellant.

Accordingly, under authority of the decision of this court in New Amsterdam Casualty Co. v. Harrington, 11 S.W.2d 533, in which a writ of error was dismissed by the Supreme Court, there is no merit in the contention that there was a fatal variance between the contract sued on and plaintiff's pleadings and the proof introduced. A former judgment in favor of Harrington was reversed by the Commission of Appeals, by reason of a variance between the plaintiff's pleadings and proof, as shown in 290 S.W. 726. It was pointed out that according to allegations in Harrington's petition, he was employed by Dr. L. F. Gragg, who carried the insurance policy on which the suit was based. But this was said: "The evidence showed that a copartnership composed of Gragg and others was the employer, and that Harrington was engaged by Gragg to work for the copartnership. And though the evidence, by reason of the notice given the Board by the casualty company, may show that the company by the issuance of the policy intended to provide for the payment of compensation to the employes of the copartnership, and that the policy was issued in the name of Gragg for the use and benefit of the copartnership and its employes, thereby in law making the copartnership the holder of the policy, yet there is no allegation contained in Harrington's pleadings to support a cause of action based on these facts."

■ Article 705 of Title 12 of the Penal Code of Texas, which was enacted for the protection of public health, was in force when plaintiff was employed. It reads: "No person, firm, corporation or common carrier, operating or conducting any hotel, cafe, restaurant, dining car or other public eating place, or operating any bakery or meat market, public dairy or candy factory in this State, shall work, employ or keep in their employ in or about any said place any person infected with or affected by any infectious or contagious disease, or work or employ any person to work in or about any said place who, at the time of his employment had not in his possession a certificate from some reputable physician of the county where said person is to be employed, attesting the fact that the bearer has been examined by such physician within one week prior to the time of employment, and that such examination discloses the fact that such person to be employed was free from any infectious or contagious disease; or fail to institute and have made a medical examination of all their employes at intervals of time not to exceed six months and after such examination promptly discharge from their employment in or about any said place any person found to be infected with or affected by any infectious or contagious disease. Whoever violates any provision of this article shall be fined not less than five nor more than one hundred dollars."

The testimony of plaintiff himself shows without controversy that when he was employed he did not have in his possession a health certificate from a physician, as required by that statute, and was never examined by a physician to determine whether or not he was "infected with or affected by any infectious or contagious disease."

After return of the verdict, defendant moved for a judgment in its favor non obstante veredicto, on the ground that since plaintiff's employment without such a medical certificate was expressly forbidden by that Penal Statute, his contract of employment was void; and since his claim for compensation was based primarily thereon, he showed no right of recovery. That motion was overruled. Defendant excepted to that ruling and also to the judgment rendered; and has prosecuted this appeal therefrom.

Plaintiff's alleged right of recovery rests not on the common law applicable to suits for negligence or breach of contract, but upon the provisions of the Workmen's Compensation Statutes alone. Oilmen's Reciprocal Ass'n v. Franklin, 116 Tex. 59, 286 S.W. 195; Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084; Employers' Indemnity Corporation v. Woods, Tex.Com. App., 243 S.W. 1085; Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556; Buchanan v. Maryland Casualty Co., 116 Tex. 201, 288 S.W. 116.

Texas Employers' Ins. Ass'n v. Tabor, Tex.Com.App., 283 S.W. 779, was a suit by Tabor for compensation under the Workmen's Compensation Law. The injuries for which compensation was sought were sustained by him on Sunday, and the provisions of the Penal Code were invoked by the Insurance Company as a defense upon the theory that since the work

he was doing on Sunday was made a penal offense by Arts. 283 and 284 of the Penal Code, plaintiff's contract to work on that day was in violation of that statute and could not furnish a basis for recovery, because it was in violation of that penal statute and contrary to public policy. In the opinion this was said [page 780]:

"The Court of Civil Appeals overruled the contention of invalidity upon the reasoning that the breach of the Sunday law was not the efficient cause of, and did not contribute to, his injuries. This may be a material inquiry in a negligence case, where the act through which the employee is injured happens to be in violation of some law. The question of proximate cause is of vital importance in negligence cases. Paragon Oil Syndicate v. Rhoades Drilling Co. (Tex.Com.App.) [115 Tex. 149], 277 S.W. 1036; 25 R.C.L. p. 1450, § 51. But the principle is not applicable to cases of contract. A contract which has for its purpose the violation of a law cannot be valid. It is void. The obligation of a contract is based upon the agreement of the parties, it is true, but it receives its binding force from the sanction of law. It is not every mutual agreement that makes a lawful contract. The law will not enforce an agreement to do that which the same law says shall not be done. It would, therefore, be anomalous, indeed, if the law were to sanction contracts which violate the law. The law prohibiting the end will not lend its aid in promoting the means designed to carry it into effect.

"Now, the very right of defendant in error to recover as an employee of Fulwiler Motor Company depends upon his showing that he was in the service of that company under a 'contract of hire,' for, unless there is a 'contract of hire,' he is not an employee within the meaning of the Workmen's Compensation Act. Vernon's Texas Civil Statutes, 1918 Supplement, art. 5246–82. If the agreement between the motor company and defendant in error was void, then there was no contract, and, of course, no employer or employee. In such a case it is not a question of proximate cause with respect to the injury, but, rather, it is a question of contract or no contract."

But it was further held that since the evidence did not conclusively show that it was the intention of the parties to the contract of employment that the work in which the employee was engaged when he was injured should be done on Sunday, the assignment of error to the refusal of the court to instruct a verdict for the defendant on the defense pleaded was properly overruled.

Montgomery Ward & Co. v. Lusk, Tex. Civ.App., 52 S.W.2d 1110, writ refused, was a suit by Mrs. Lusk for 202 hours work in excess of the limit of time fixed by Art. 1569 of the Penal Code. A judgment in her favor was reversed and judgment rendered by the Court of Appeals in favor of the defendant. This was said in the opinion:

"The contract between Mrs. Lusk and the defendant by which she was to work such overtime and receive pay therefor was illegal. She here seeks to enforce such illegal contract. The rule is well established that a court will not enforce an illegal contract, and when the illegality of the contract sued upon appears, it is the duty of the court to at once decline to enforce it. 10 Tex.Jur. 183; 6 R.C.L. 692; 13 C.J. 410; Texas Employers' Ins. Ass'n v. Tabor (Tex.Com.App.) 283 S.W. 779, 780; Chimene v. Pennington, 34 Tex. Civ.App. 424, 79 S.W. 63 (writ refused); Osage Oil & Gas Co. v. Caulk (Tex.Civ. App.) 243 S.W. 551, par. 8; Campbell v. Hood (Tex.Com.App.) 35 S.W.2d 93, par. 3 [85 A.L.R. 266].

"It is true that Penal Code, article 1572, which imposes a penalty on the employer for a violation of the above act, does not fix any penalty on the employee for a violation thereof. However, this is not material. The act prohibiting the employment of females for more than 9 hours per day is not intended for the protection of the employee only. It is in the nature of a state police regulation, and is intended for the protection of the public health and the perpetuation of the human race, and is therefore for the benefit of the public generally. Birkett v. Chatterton, 13 R. I. 299, 43 Am.Rep. 30; Short v. Bullion-Beck & Champion Mining Co., 20 Utah 20, 57 P. 720, 45 L.R.A. 603; 39 C.J. 58. Such statutory protection cannot be waived by a single member of society. To permit individuals to enter into contracts to violate the law and then invoke the aid of the courts to secure the benefits thereof would be to encourage the doing of the very thing the law prohibits. That the law intended to prohibit such contracts is made clear by the act. The prohibition is directed, not against particular individuals,

but against a particular thing, namely, the employment of females for more than 9 hours per day. It provides that 'no female shall be employed,' etc. It is the employment that is forbidden."

In Gorman v. Gause, Tex.Com.App., 56 S.W.2d 855 it was held that a contract between husband and wife that property to be thereafter acquired should become the separate property of the wife was void, because in contravention of the statute, and in that connection this was said. [page 858]: "It has been uniformly held by the decisions of our courts that a contract cannot impair the validity of any law (Hartford Fire Ins. Co. v. Galveston H. & S. A. R. Co. (Tex.Com.App.) 239 S.W. 919, American Refining Co. v. Gasoline Products Co. (Tex.Civ.App.) 294 S.W. 967), nor control or limit the provisions of a statute. Raywood Rice, Canal & Milling Co. v. Erp, 105 Tex. 161, 146 S.W. 155; Converse v. Miller, 33 Tex. 216; Shelton v. Marshall, 16 Tex. 344; Heirs of Hunt v. Heirs of Robinson, 1 Tex. 748; Texas Employers' Ins. Ass'n v. Tabor (Tex.Com. App.) 283 S.W. 779; Hennessy v. Automobile Owners' Ins. Ass'n (Tex.Com.App.) 282 S.W. 791, 46 A.L.R. 521; Paragon Oil Syndicate v. Rhoades Drilling Co., 115 Tex. 149, 277 S.W. 1036." See, also, Beaton v. Continental Southland Savings & Loan Ass'n, Tex.Civ.App., 101 S.W.2d 905, writ dismissed; 10 Tex.Jur., sect. 106, p. 183, sect. 107, p. 185; Davis v. Sittig, 65 Tex. 497; Floyd v. Patterson, 72 Tex. 202, 10 S.W. 526, 13 Am.St.Rep. 787; 6 R.C.L. par. 104, p. 698, par. 105, p. 699, par. 107, p. 701.

Those authorities are applicable in this case and under the doctrine there announced we believe it clear that plaintiff showed no right of recovery because his contract of employment, which was the primary basis of his suit for compensation, and without which he could not invoke the benefits of the Workmen's Compensation Statute, was in violation of the terms of the Penal Statutes noted, in that at the time of his employment he did not have a certificate of a physician required by that statute; in fact, had never been examined by a physician at any time, to determine whether or not he was free of any infectious or contagious disease. We therefore hold that the court erred in overruling defendant's motion for judgment in its favor, notwithstanding the findings of the jury. For that error the judgment of the trial court is reversed and judgment is here rendered that plaintiff take nothing by his suit, and that defendant (appellant here) go hence without day; without a determination of the merits of other assignments, because unnecessary.